

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

HARTFORD ACCIDENT AND          §
INDEMNITY INSURANCE COMPANY,   §
                               §
          Plaintiff,           §
                               §
VS.                            §   NO. 4:09-CV-295-A
                               §
THE CAPELLA GROUP, INC. d/b/a  §
CARE ENTREE,                   §
                               §
          Defendant.           §

MEMORANDUM OPINION
AND
ORDER

     This diversity action was brought under the Federal

Declaratory Judgment Act, 28 U.S.C. § 2201.  Plaintiff, Hartford

Accident and Indemnity Insurance Company ("Hartford"),[1] and

defendant, The Capella Group, Inc., d/b/a Care Entree

("Capella"), have each filed a motion for summary judgment.

I.

The Grounds of the Motions
and Summary of the Court's Rulings

     In Hartford's motion, it seeks declarations:  (1) that under

the terms of its policy number 21 SBQ NV3151[2] ("Policy") it has

---

[1]Plaintiff indicates in its motion that it is incorrectly identified in the style of the case and is
properly identified as "Hartford Accident and Indemnity Company."

[2]Hartford also issued to Capella an umbrella policy.  Capella does not contend that the umbrella
policy applies to the Georgia Suit.

no duty to defend Capella in the underlying Georgia lawsuit ("Georgia Suit") because (a) a claim by the plaintiffs in the Georgia Suit ("Georgia Plaintiffs") for monetary relief as an equitable remedy is not a claim for damages within the scope of the Policy, (b) the Georgia Plaintiffs' claims for injunctive and declaratory relief fail to trigger the duty to defend, (c) Hartford has no duty to defend Capella against claims for punitive damages, and (d) claims asserted in the Georgia Suit are excluded by a Policy exclusion pertaining to injury arising out of a breach of contract; (2) that, for those same reasons, it has no duty under such Policy to indemnify Capella as to claims made against Capella in the Georgia Suit; (3) that waiver and estoppel do not prevent it from seeking to withdraw the defense it is now providing to Capella in such suit under a reservation of rights letter; and (4) that Capella's counterclaim for attorney's fees is without merit.

Capella, in its motion, seeks a declaration that Hartford is obligated to continue to defend it in the Georgia Suit because: (1) Hartford's insuring promise requires a defense; (2) the duty to defend is not excluded; and (3) Hartford should not be allowed to withdraw the defense it promised to provide in a reservation of rights agreement.

2

Having considered the motions, the responses and replies, the summary judgment record, and pertinent legal authorities, the court concludes that Capella's motion should be granted as to Hartford's duty to defend, while Hartford's motion should be denied as to that issue, and Hartford's motion should be granted as to Capella's counterclaim for attorney's fees.  The court has concluded that a decision as to whether Hartford will have an indemnification obligation as to damages that might be imposed on Capella in the Georgia Suit is premature, with the consequence that the court is dismissing without prejudice the requests of the parties seeking a ruling on that subject.  A ruling on the effect of Hartford's assumption of Capella's defense under a reservation of right's letter is unnecessary in view of the court's other rulings.

II.

### Basic Facts About Which There is no Dispute

A.   The Policy

The Policy defines Hartford's payment and defense obligations, in pertinent part, as follows:

> [Hartford] will pay on behalf of [Capella] those sums that [Capella] becomes legally obligated to pay as damages because of . . . "personal and advertising injury" to which this insurance applies. [Hartford] will have the right and duty to defend [Capella]

3

> against any "suit" seeking those damages. However,
> [Hartford] will have no duty to defend [Capella]
> against any "suit" seeking damages for . . . "personal
> and advertising injury" to which this insurance does
> not apply.

Stipulations at 35.

The term "personal and advertising injury" is defined in the

Policy, in pertinent part, as follows:

> "Personal and advertising injury" means injury,
> including consequential "bodily injury", arising out of
> one or more of the following offenses:
>
> . . . .
>
> (e) Oral, written or electronic publication of material
> that violates a person's right of privacy; . . . .

Id. at 53.   The Policy defines "suit," in pertinent part, as

follows:

> "Suit" means a civil proceeding in which damages
> because of . . . "personal and advertising injury" to
> which this insurance applies are alleged . . .

Id. at 54.

The Policy excludes from coverage any "Personal and

Advertising Injury . . . [a]rising out of any breach of contract,

except an implied contract to use another's 'advertising idea' in

your 'advertisement' or on 'your web site.'"   Id. at 55.

4

The Policy contains the following provision relevant to supplementary payments:

> [Hartford] will pay, with respect to any claim or "suit" we investigate or settle, or any "suit" against an insured we defend:
>
> . . . .
>
> d.   All reasonable expenses incurred by the insured at our request to assist us in the investigation of the claim or defense of the "suit" . . . .

Id. at 37.

**B.**   The Georgia Suit

The Georgia Suit was filed on November 17, 2006, as civil action No. CV106-176 in the United States District Court for the Southern District of Georgia, Augusta Division, styled "William Andrew Rivell, M.D., and Alan B. Whitehouse, M.D., individually and on behalf of all other persons similarly situated, and the Medical Association of Georgia, v. Private Health Care Systems, Inc. and the Capella Group, Inc., d/b/a Care Entree." A second amended class action complaint was filed in the Georgia Suit on August 15, 2008. Capella tendered defense of the Georgia Suit to Hartford on or about September 24, 2008. Between being served and tendering its defense to Hartford, Capella was defended by counsel of its choice. Hartford, by letter dated October 20,

2008, undertook to defend Capella in the Georgia Suit, subject to

a reservation of rights, and continues to defend it at this time.

The Georgia Suit is a purported class action and alleges, in

pertinent part:

> 15.  From time to time the named Plaintiffs and
> all members of the Plaintiff Class individually execute
> "participating provider agreements," "network
> agreements," or similarly denominated agreements
> ("Network Agreement") with a physician practice group,
> physician-hospital organization, insurance company
> network, or similar organization ("PHO"). . . . PHOs,
> in turn, may assign Network Agreements "upstream"
> pursuant to contracts with PPOs such as PHCS ("PHO/PPO
> Contracts").  Typically, PHO/PPO Contracts permit a PPO
> to sell, rent or lease Provider Discounts to insurance
> companies and other Payors who have contracted to pay
> the costs of Covered Persons' covered medical claims.
>
> 16.  Capella is a [medical discount card company
> ("DCC")].  The DCCs referenced throughout this
> Complaint are not Payors that have contracted to pay
> for the costs of Covered Persons' medical care ("Non-
> Payors").  DCCs sell a non-insurance product commonly
> referred to as a "health discount card," "medical
> discount card" or other similarly denominated product
> or membership program (collectively referred to as
> "Medical Discount Cards") that offers members purported
> access to Provider Discounts. . . . Rather than
> contracting directly with Providers, Capella and other
> DCCs purchase, rent, or lease from PPOs Network
> Agreements or other access to Provider Discounts, then
> market and sell purported Provider Discounts to
> consumers by way of a Medical Discount Card.
>
> 17.  Each of the named Plaintiffs, and all members
> of the Plaintiff Class, executed one or more Network
> Agreements that was assigned to PHCS by a PHO pursuant
> to a PHO/PPO contract, or otherwise utilized by PHCS.
> Plaintiffs did not, in the Network Agreements or

otherwise, authorize PHCS to sell, rent, or lease
Plaintiffs' Network Agreements to Non-Payors, including
Capella and other DCCs, nor did Plaintiffs authorize
Capella to sell Medical Discount Cards that purport to
grant Provider Discounts offered by the Plaintiffs to
consumers.

18.   PHCS sold, rented or leased the Plaintiffs'
Network Agreements to Non-Payors, including Capella and
other DCCs, pursuant to contracts between PHCS and
those entities (collectively, "PHCS/DCC Leases").
Capella and other DCCs have utilized, and continue to
utilize, the Plaintiffs' Network Agreements and
Provider Discount information purchased, rented or
leased from PHCS pursuant to PHCS/DCC Leases for the
purpose of marketing and selling Medical Discount Cards
purporting to grant holders access to Provider
Discounts from the Plaintiffs. . . . Upon information
and belief, Capella has derived substantial revenues by
selling Medical Discount Cards purporting to grant
holders access to Provider Discounts offered by the
Plaintiffs.

19.   None of the subject Medical Discount Cards
sold by Capella or other DCCs is authorized under a
separate contract with each of the Plaintiffs. . . .
Upon information and belief, other Medical Discount
Cards marketed and sold by DCCs utilize Plaintiffs'
Network Agreements and Provider Discounts purchased,
leased or rented from PHCS without Plaintiffs' consent
or authorization and without a separate contract
between the DCC and each of the Plaintiffs.

Stipulations at 11-14.

Based on these allegations, the Georgia Plaintiffs asserted

a claim for "Appropriation of Plaintiffs' Names for Financial

Gain," seeking monetary damages, injunctive and declaratory

relief, and punitive damages.   Id. at 20-22.

7

III.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must

8

"identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. <u>Anderson</u>, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. <u>Simmons v. Lyons</u>, 746 F.2d 265, 269 (5th Cir. 1984).

IV.

<u>Analysis</u>

A.    <u>There is a Claim for Damages in the Second Amended Class Action Complaint</u>

Texas law governs this coverage dispute. In Texas, with exceptions that do not appear to apply in this case, an insurer's duty to defend is determined by the policy coverage language and the allegations of the pleadings of the damage suit without regard to the truth or falsity of those allegations. <u>GuideOne Elite Ins. Co. v. Fielder Road Baptist Church</u>, 197 S.W.3d 305, 308 (Tex. 2006). If the pleadings fail to allege facts within the scope of coverage, the insurer has no duty to defend. <u>Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.</u>, 939 S.W.2d 139, 141-42 (Tex. 1997). If coverage is potentially

9

afforded for one claim, the insurer must defend the entire suit.
Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 491 (Tex.
2008).

Hartford initially contends it has no duty to defend Capella
because the Georgia Plaintiffs do not seek "damages" within the
scope of the insuring language in the Policy.  The Georgia
Plaintiffs asserted a claim for unlawful appropriation of their
names for financial gain.  Hartford maintains that under Georgia
law, recovery for this tort is measured by the "unjust enrichment
of the defendant and not by the injury to the plaintiff's
feelings or reputation."  Pl.'s Mot. for Summ. J. and Br. in
Supp. ("Pl.'s Br.") at 9, quoting Cabaniss v. Hipsley, 151 S.E.2d
496, 506 (Ga. Ct. App. 1966).  Hartford contends that the Georgia
Plaintiffs seek only "monetary relief from Capella based on a
theory of restitution, i.e., an amount equal to the value Capella
was unjustly enriched by its unauthorized and wrongful
appropriation of their names."  Id. at 10.  According to
Hartford, this shows that the Georgia Plaintiffs seek equitable
rather than legal damages.  Hartford thus contends there is no
claim for damages sufficient to invoke its duty to defend because
in Texas, money awarded for equitable relief cannot be considered
"damages" under the Policy.

The difficulty for Hartford is that none of the cases cited supports its broad proposition. Hartford relies on language from Nortex Oil & Gas Corp. v. Harbor Ins. Co., 456 S.W.2d 489, 493-94 (Tex. App.--Dallas 1970, no writ), SnyderGeneral Corp. v. Century Indemnity Co., 907 F. Supp. 991, 1003-1004 (N.D. Tex. 1995), judgment aff'd in part, vacated in part, 113 F.3d 536 (5th Cir. 1997), and Mustang Tractor & Equip. Co. v. Liberty Mut. Ins. Co., 1993 WL 566032 (S.D. Tex. Oct. 8, 1993). Nortex, SnyderGeneral, and the portion of Mustang Tractor cited by Hartford each concerned an insurer's duty to indemnify, rather than defend, under specific policy provisions.[3] However, an insurer's duty to defend is distinct from, and broader than, its duty to indemnify or pay. Enserch Corp. v. Shand Morahan & Co., Inc., 952 F.2d 1485, 1493 (5th Cir. 1992); Zurich, 268 S.W.3d at 490. "An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured." Zurich, 268 S.W.3d at 490. Thus, Hartford may have a duty to defend Capella, even if it

---

[3]Although the citation in Hartford's brief to SnyderGeneral Corp. v. Century Indem. Co., 907 F.Supp. 991 (N.D. Tex. 1995), indicates that the case was "vacated in part on other grounds," Pl.'s Br. at 10, the Fifth Circuit in fact reversed the district court on the exact point on which Hartford relies.

ultimately has no obligation to indemnify it against an award of damages.  See id.

Hartford relies on Zurich for the proposition that "a court can take the applicable measure of damages into consideration in deciding whether a covered type of damage is being sought." Pl.'s Br. at 11 n.34.  The court in Zurich held that in one of the five class-action complaints at issue specific policy language precluded coverage for the claims asserted in the complaint.  As to the remaining complaints, again looking to the pleadings and the policy, the court found they alleged a claim for damages sufficient to invoke the duty to defend, even where the complaints sought "legal and equitable relief."  Zurich, 268 S.W.3d at 493-94.

Here, the Policy provides coverage for "personal and advertising injury," defined as the "[o]ral, written or electronic publication of material that violates a person's right of privacy."  Stipulations at 35, 53.  The Georgia Suit seeks damages for the "appropriation and use by . . . Capella of Plaintiffs' names."  Id. at 20.  The parties agree that the Georgia Suit alleges a claim for "personal and advertising injury" under the Policy.  The Georgia Plaintiffs seek damages "in an amount equal to the commercial value to Defendants of the

appropriation," as well as punitive damages and injunctive and

declaratory relief.  <u>Id.</u>  Hartford directs the court to nothing

in the Policy excluding coverage for the types of damages sought

by the Georgia Plaintiffs in the second amended class action

complaint.  Therefore, the court concludes that Hartford has

failed to show that it does not have an obligation to defend

Capella as to the claims asserted in that version of the

complaint.

B.  <u>The Breach of Contract Exclusion Does Not Prevent
    Hartford from Having a Defense Obligation as to the
    Claims Made Against Capella in the Second Amended Class
    Action Complaint</u>

Hartford contends that it does not have a defense obligation

by reason of the Policy exclusion for personal and advertising

injury "[a]rising out of any breach of contract."  Stipulations

at 55.  The argument of Hartford is that Capella's alleged

conduct would not have occurred but for the breach by the other

Georgia defendant of its contract with the Georgia Plaintiffs and

that, therefore, the allegations against Capella "arise out of" a

breach of contract and are excluded by the Policy.

The court finds this interpretation of the Policy untenable.

None of the authorities cited by Hartford actually support its

contention.  Rather, each case cited by Hartford involved an

13

expressly alleged breach of contract by the insured.  The current

pleading in the Georgia Suit contains no such allegation.  The

Seventh Circuit, interpreting a policy exclusion virtually

identical to the one at issue here, found the language at best

created an ambiguity, which the court construed in favor of the

insured and the duty to defend.  Supreme Laundry Serv., L.L.C. v.

Hartford Cas. Ins. Co., 521 F.3d 743, 749 (7th Cir. 2008).  The

court agrees with the reasoning of the Seventh Circuit, finding

it "somewhat odd to read the [policy] as restricting the

insured's coverage where the insured is not a party to the

contract that has allegedly been breached and where the [claim]

for which the insured seeks coverage is not for breach of

contract."  Id.  While the court is inclined to view the

exclusion here as inapplicable, it is at best ambiguous, and must

be construed in favor of Capella.  See id.; Lynch Props., Inc.,

v. Potomac Ins. Co., 140 F.3d 622, 626 (5th Cir. 1998); Nat'l

Union Fire Ins. Co. v. Hudson Energy Co., Inc., 811 S.W.2d 552,

555 (Tex. 1991).

C.   The Requests by the Parties for Declaratory Relief
     Related to Whether Hartford Has an Indemnification
     Obligation are Premature

     The court can only speculate at this time as to whether

Hartford ultimately will have an obligation to indemnify Capella

14

as to any liability that might be imposed on Capella in the Georgia Suit.   Therefore, Hartford's request for declaratory judgment as to its duty to indemnify is premature.   To whatever extent Capella makes a request in its counterclaim for a declaration that Hartford has an indemnification obligation in reference to the claims made in the Georgia Suit, that request likewise is premature.   The court is exercising its discretion not to consider either party's request for a ruling on the indemnification issue, and is <u>sua sponte</u> dismissing both requests without prejudice.

D.   <u>Capella is Not Entitled to Attorney's Fees</u>

Capella counterclaimed against Hartford for an award of attorney's fees premised upon language in the Policy whereby Hartford agreed to pay, "with respect to any claim" it investigates, "[a]ll reasonable expenses incurred by the insured at our request to assist us in the investigation of the claim . . . . "   Stipulations at 37.   Capella contends this promise to pay encompasses its claim for coverage under the Policy, and that the present action is part of Hartford's "investigation of the claim."   Def.'s First Am. Answer and Countercl. at 3.   Capella thus contends Hartford is liable to it

15

for its costs and expenses incurred in defending the present action, as they were incurred "at Hartford's request."  Id.

Hartford objects to Capella's characterization of the present action as a "request" that would trigger the aforementioned Policy provisions.  Hartford relies on Milwaukee Mechs. Ins. Co. v. Davis, 198 F.2d 441 (5th Cir. 1952), where the Fifth Circuit rejected the argument now raised by Capella: "[t]o say that a plaintiff in a declaratory judgment action . . . 'requests' the defendant to employ attorneys to contest the action, is a mere play upon words and is contrary to the real substance of the transaction."  Id. at 445.  In construing the policy to determine the true intent of the parties, the court "[did] not think that either the insurance company or the insured could have had the intention that the insurance company could defend a suit on its policy or could file a declaratory judgment action only at the risk of being liable for attorney's fees incurred by the insured."  Id.

In response Capella contends that "Milwaukee Mechs.' rationale is undercut by subsequently developed case law that has ruled opposite to its position."  Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. at 19.  Notably absent from the "subsequently developed case law" cited by Capella is any opinion of the Fifth

16

Circuit.  As Capella offers no binding authority to support its

claim for attorney's fees under the Policy, summary judgment is

granted to Hartford on that claim.

V.

ORDER

For the reasons discussed above,

The court ORDERS and DECLARES that Hartford has an

obligation under the Policy to defend the claims that are being

made against Capella in the Second Amended Class Action Complaint

in the Georgia Suit.[4]

The court further ORDERS and DECLARES that Hartford has no

obligation to pay Capella for costs, expenses, or attorneys' fees

incurred by Capella in connection with the instant declaratory

judgment action.

The court further ORDERS that all other claims for

declaratory relief asserted by either party in the instant

---

[4]The court can only speculate as to what defense obligation, if any, Hartford might have under a subsequent version of the complaint in the Georgia Suit.

declaratory judgment action be, and are hereby, dismissed without prejudice because they are premature.

SIGNED December 21, 2009.

_____
JOHN McBRYDE
United States District Judge